**WO** JDN

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Todd Christopher Chisman,  )  No. CV 06-1647-PHX-JAT (MEA)
　　　　　Plaintiff,　　　　)  **ORDER**
vs.　　　　　　　　　　　　)
Joseph Arpaio, et al.　　　　)
　　　　　Defendants.　　　)

Plaintiff Todd Christopher Chisman filed this civil rights action pursuant to 42 U.S.C. § 1983 against Perez, a Detention Officer with the Maricopa County Sheriff's Office (Doc. #8).[1] Defendant filed a Motion for Summary Judgment (Doc. #24). Plaintiff did not respond. Defendant then moved to dismiss the action for failure to prosecute (Doc. #32).

The Court will grant Defendant's summary judgment motion, deny the motion to dismiss as moot, and terminate the action.

**I.　Background**

Plaintiff's claim arose during his confinement at the Maricopa County Fourth Avenue Jail in Phoenix, Arizona (Doc. #8 at 1). Plaintiff alleged that on May 14, 2006, he suffered a severe injury to his left arm when he fell from the top bunk (id. at 5). Plaintiff suffered a ruptured biceps and ultimately had to have surgery on his arm. Plaintiff alleged that

---

[1] Upon screening, the Court dismissed Maricopa County, the Maricopa County Sheriff's Department, Sheriff Joseph Arpaio, and Detention Nurse Jane Doe as defendants (Doc. #9).

1  Defendant acted with deliberate indifference by failing to get immediate medical treatment
2  for Plaintiff (id.).² He also alleged that the delay between his first visit to the hospital and
3  his scheduled surgery constituted deliberate indifference. The Court ordered Defendant to
4  respond to the First Amended Complaint, and Defendant filed an Answer (Doc. ##9, 17).

Defendant then moved for summary judgment on the grounds that (1) Plaintiff did not suffer from a serious medical need, (2) Defendant was not deliberately indifferent, and (3) Defendant is entitled to qualified immunity (Doc. #24). On December 12, 2007, the Court issued an Order informing Plaintiff of his obligation to respond to the summary judgment motion (Doc. #26).³ Plaintiff did not file a response to the motion.

On January 30, 2008, the Court issued an Order that withdrew the reference to the Magistrate Judge as to the summary judgment motion, indicating that the motion was ready for consideration (Doc. #29). The copy of this Order mailed to Plaintiff was returned as undeliverable (Doc. #31).

One week later, Defendant filed a Motion to Dismiss for Failure to Prosecute (Doc. #32). The Court issued another Order informing Plaintiff of the time in which he must respond to the motion (Doc. #33). This Order was also returned in the mail as undeliverable (Doc. #34).

## II.   Legal Standards

### A.   Summary Judgment

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the non-moving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with

---

²The Court dismissed Count I, which concerned the lack of ladders to descend from top bunks, for failure to state a claim (Doc. #9).

³Notice required under Rand v. Rowland, 154 F.3d 952, 962 (9th Cir. 1998).

1  affidavits, which it believes demonstrate the absence of a genuine issue of material fact.
2  Celotex, 477 U.S. at 323. If the moving party meets its initial responsibility the burden then
3  shifts to the opposing party who must demonstrate that the fact in contention is material, i.e.,
4  a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty
5  Lobby, Inc., 477 U.S. 242, 248 (1986), and that the dispute is genuine, i.e., the evidence is
6  such that a reasonable jury could return a verdict for the nonmoving party. Id. at 250; see
7  Triton Energy Corp. v. Square D. Co., 68 F.3d 1216, 1221 (9th Cir. 1995). The opposing
8  party need not establish a material issue of fact conclusively in its favor; it is sufficient that
9  "the claimed factual dispute be shown to require a jury or judge to resolve the parties'
10  differing versions of the truth at trial." First Nat'l Bank of Arizona v. Cities Serv. Co., 391
11  U.S. 253, 288-89 (1968).

12  Rule 56(c) mandates the entry of summary judgment against a party who, after
13  adequate time for discovery, fails to make a showing sufficient to establish the existence of
14  an element essential to that party's case and on which the party will bear the burden of proof
15  at trial. Celotex, 477 U.S. at 322-23. Bare allegations unsupported by any factual data or
16  legally competent evidence do not give rise to a genuine dispute of material fact. See Hansen
17  v. U.S., 7 F.3d 137, 138 (9th Cir. 1993).

18  When considering a summary judgment motion, the court examines the pleadings,
19  depositions, answers to interrogatories, and admissions on file, together with the affidavits,
20  if any. Fed. R. Civ. P. 56(c). The affidavits presented by the parties must "set forth such
21  facts as would be admissible in evidence." Fed. R. Civ. P. 56(e). And the evidence of the
22  non-movant is "to be believed, and all justifiable inferences are to be drawn in his favor."
23  Anderson, 477 U.S. at 255.

24  **B.    Eighth Amendment**

25  It is unclear whether Plaintiff was a pretrial detainee or a convicted prisoner when he
26  sustained his injury. The Fourteenth Amendment, and not the Eighth Amendment, applies
27  to pretrial detainee cases. Bell v. Wolfish, 441 U.S. 520, 535, n. 16 (1979). But even if
28  Plaintiff was a pretrial detainee, the Eighth Amendment's cruel and unusual punishment

- 3 -

1 clause provides a minimum standard for judging his due process right to medical care. Jones
2 v. Johnson, 781 F.2d 769, 771 (9th Cir. 1986).

3       In order to state a § 1983 claim for violation of the Eighth Amendment based on
4 inadequate medical care, a plaintiff must allege "acts or omissions sufficiently harmful to
5 evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97,
6 106 (1976). Indications that a prisoner has a "serious" need for medical treatment include
7 the existence of an injury that a reasonable doctor or patient would find important and worthy
8 of comment or treatment, the presence of a medical condition that significantly affects an
9 individual's daily activities, or the existence of chronic and substantial pain. McGuckin v.
10 Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other grounds, WMX Techs.,
11 Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (*en banc*).

12       "[D]eliberate indifference to a prisoner's serious medical needs is the 'unnecessary
13 and wanton infliction of pain.'" Estelle, 429 U.S. at 104-05. An official is deliberately
14 indifferent if he both knows of and disregards an excessive risk to an inmate's health.
15 Farmer v. Brennan, 511 U.S. 825, 837 (1994). Thus, to establish deliberate indifference, a
16 plaintiff must establish that the alleged harm was "sufficiently serious" and that the official
17 acted with a "sufficiently culpable state of mind." Id. at 834 (citing Wilson v. Seiter, 501
18 U.S. 294, 298, 302-3 (1991)). Mere negligence or medical malpractice does not establish a
19 sufficiently culpable state of mind. Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th
20 Cir. 1980). But a prisoner does not have to prove that he was completely denied medical care
21 in order to demonstrate deliberate indifference. Lopez v. Smith, 203 F.3d 1122, 1132 (9th
22 Cir. 2000). Deliberate indifference may be shown when an official denies, delays, or
23 intentionally interferes with treatment or by the way that a medical professional provides
24 care. Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). A difference of medical opinion
25 is insufficient to establish deliberate indifference. Toguchi v. Chung, 391 F.3d 1051, 1058
26 (9th Cir. 2004).

27
28

**III. Analysis**

    **A. Failure to Respond**

Initially, the Court notes that Plaintiff failed to file a response in opposition to the summary judgment motion. Local Rule of Civil Procedure 7.2(i) provides that if a party files a motion, and "the opposing party does not serve and file the required answering memoranda, . . . such non-compliance may be deemed a consent to the . . . granting of the motion." See also Ghazali v. Moran, 46 F.3d 52, 53-54 (9th Cir. 1995) (providing that the district court did not abuse its discretion in granting the defendants' motion to dismiss pursuant to local rule where the *pro se* plaintiff had time to respond to the motion but failed to do so).

After Defendant filed the Motion for Summary Judgment, the Court issued an Order informing Plaintiff of his obligation to respond and that failure to respond may be treated "as a consent to the granting of that motion" (Doc. #26). Plaintiff did not file a response. While the failure to respond may be deemed a consent to the granting the motion, the Court will nonetheless address the motion on its merits.

    **B. Deliberate Indifference**

        *1. Facts*

Defendant sets forth a detailed statement of facts documenting the course of events beginning on May 14, 2006, the date Plaintiff fell off the top bunk and injured his left arm (Doc. #25, Def.'s Statement of Facts (DSOF) ¶¶ 2-3). These facts are derived from Plaintiff's deposition testimony (id., Ex. A, Pl. Dep., July 26, 2007), Plaintiff's Inmate Medical Request (id., Ex. B), Defendant's declaration (id., Ex. D), the Incident Report (id., Ex. E), and Plaintiff's medical records (id., Exs. F-G).

Immediately after the accident, Plaintiff used the intercom button in his cell to notify the tower officer that he had injured his arm (id., DSOF ¶ 6). The tower officer told Plaintiff to submit an inmate medical request, referred to as a tank order, to request medical attention (id. ¶ 7). Tank orders are collected daily by nurses making rounds at the jail facilities (id. ¶ 8). On May 15, 2006, Plaintiff submitted a tank order about the accident and his request to see a doctor; his tank order was received by medical officials that same day at 10:30 a.m. (id.

- 5 -

1 ¶¶ 9-10).

2 About two hours later, Defendant was conducting a security walk in Section 2-D of
3 the Fourth Avenue Jail—where Plaintiff was housed—along with a nurse who was
4 distributing medications (id. ¶¶ 11-12).  Plaintiff complained to Defendant that his arm was
5 injured.  Defendant was unaware that Plaintiff had already submitted a tank order so she and
6 the nurse told Plaintiff to fill out a tank order (id. ¶ 13).  According to the Fourth Avenue Jail,
7 Section 2-D logbooks, this interaction—which lasted less than a minute—was Defendant's
8 only contact with Plaintiff on May 15, 2006 (id. ¶¶ 15, 17).  Defendant did not believe that
9 Plaintiff was suffering a medical emergency because Plaintiff was not bleeding, did not
10 complain that his arm was broken, and appeared coherent and responsive (id. ¶ 16).

11 Then, at 2:30 p.m., Plaintiff was seen in the medical unit by a physician's assistant for
12 his ruptured biceps (id. ¶ 19, Ex. E).  At that time, Dr. Balagi ordered Plaintiff transported
13 to the Maricopa Medical Center, where he was seen by triage by 4:00 p.m. (id. ¶ 20).
14 Plaintiff was prescribed pain medication and arrangements were made for surgery, which was
15 performed in June 2006 (id. ¶¶ 21-22).

16 ### *2. Defendant's Contentions*

17 Defendant maintains that a ruptured biceps does not constitute a serious medical
18 injury (Doc. #24 at 6).  According to literature from Orthogate, a patient education web site,
19 when a biceps tendon ruptures, there is a pop in front of the elbow, and, at first, the pain is
20 intense (Doc. #25, DSOF ¶ 4, Ex. C).  The pain often subsides quickly after a complete
21 rupture when tension is taken off, but swelling and bruising usually develop, and the biceps
22 may appear balled up near the elbow (id.).  The arm will likely feel weak upon attempts to
23 bend the elbow or lift the shoulder (id.).  Biceps ruptures can be treated surgically or with
24 non-surgical measures, such as a sling (Doc. #25, DSOF ¶ 5, Ex. C).  Anti-inflammatory
25 medicines may be taken to address pain and swelling (id.).  Given this type of injury,
26 Defendant contends that the short delay in receipt of medical care did not result in further
27 significant injury (Doc. #24 at 7).

28 Next, Defendant argues that she did not delay Plaintiff's access to medical care (id.).

1  Defendant notes that Plaintiff received medical attention within 2 hours of complaining to
2  Defendant.  Defendant submits that even if Plaintiff's condition posed a substantial risk of
3  serious harm, Defendant—who has no medical training—did not recognize a serious medical
4  need and was therefore not subjectively aware of any risk to Plaintiff (id. at 8). Defendant
5  further argues that the mere 2-hour delay was not a substantially serious deprivation of
6  medical attention and it did not cause Plaintiff any harm (id.).  As to the dely between the
7  initial hospital visit and the surgery, Defendant states that she was not involved in nor did she
8  have any input in the scheduling of Plaintiff's surgery (id. at 7).

### *3. Analysis*

10  As discussed *supra*, an injury presents a serious medical need if a reasonable doctor
11  would find the injury worthy of comment or treatment, if the injury significantly affects an
12  individual's daily activities, or if the injury is accompanied by chronic and substantial pain.
13  See McGuckin, 974 F.2d at1059-60.  Plaintiff did not submit a response to the summary
14  judgment motion; however, he did file a verified First Amended Complaint in this case (Doc.
15  #8).  A verified complaint may be used as an affidavit opposing summary judgment if it is
16  based on personal knowledge and sets forth specific facts admissible in evidence. Schroeder
17  v. McDonald, 55 F.3d 454, 460 (9th Cir.1995), citing Fed. R. Civ. P. 56(e).  In his pleading,
18  Plaintiff alleged that he was in excruciating pain and asked for emergency medical treatment
19  (Doc. #8 at 5).  The record reflects that Plaintiff's injury warranted a transfer to the hospital,
20  treatment with pain medication, and surgery (Doc. #25, DSOF ¶¶ 20-22).

21  Construing Plaintiff's allegations liberally and given the treatment he ultimately
22  received, there is a material question of fact regarding whether his injury was worthy of
23  comment and resulted in substantial pain such that he suffered a serious medical need.

24  Even assuming that Plaintiff suffered a serious medical need, any delay in providing
25  medical treatment does not constitute deliberate indifference unless the delay was harmful.
26  Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989) (quoting Shapley v. Nevada Bd. of
27  State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985) (*per curiam*)); see Hallett v.
28  Morgan, 296 F.3d 732, 746 (9th Cir. 2002) (the Eighth Amendment is only violated if

1 "delays occurred to a patient with problems so severe that delays would cause significant harm and that Defendants should have known this to be the case ").

In his First Amended Complaint, Plaintiff claimed that the denial of emergency medical attention resulted in a 30% loss of left arm function (Doc. #8 at 5). But he submitted no evidence to document this injury, nor did he explain how the delay between his interaction with Defendant and his visit to the medical unit could have been the cause of that partial loss of function. Moreover, Plaintiff failed to allege or demonstrate how Defendant, who is not a licensed medical professional, could have been aware of any risk to Plaintiff. Indeed, even the nurse who was with Defendant did not view Plaintiff's condition as an emergency; the nurse told Plaintiff to fill out a tank order (Doc. #25, DSOF ¶ 16).

Regarding Plaintiff's pain, the evidence reflects that Plaintiff was treated with pain medication just hours after complaining to Defendant (Doc. #25, DSOF ¶¶ 20-21). In Wood v. Housewright, the Ninth Circuit held that a delay of several *days* in receiving pain medication for a broken shoulder did not amount to a constitutional violation. 900 F.2d 1332, 1333-35 (9th Cir. 1990). Thus, Plaintiff's 2-hour delay falls well short of establishing an Eighth Amendment deprivation.

Defendant has met her initial burden by producing affirmative evidence that negates an essential element of Plaintiff's case; namely, Defendant's liability. See Celotex, 477 U.S. at 331. When considering the First Amended Complaint, Plaintiff has failed to make a showing sufficient to defeat summary judgment. See Celotex, 477 U.S. at 322-23. There is no evidence that the 2-hour delay was harmful, nor has Plaintiff disputed Defendant's evidence that she was unaware of a substantial risk of serious harm to Plaintiff. On this record, Defendant was not deliberately indifferent. As such, there exists no genuine issue of material fact as to Defendant's liability. Summary judgment will be granted for Defendant.

In light of this determination, the Court need not address Defendant's qualified immunity argument or her Motion to Dismiss for Failure to Prosecute, which will be denied as moot.

**IT IS ORDERED:**

(1) Defendant's Motion for Summary Judgment (Doc. #24) is **granted.**

(2) Defendant's Motion to Dismiss for Failure to Prosecute (Doc. #32) is **denied** as moot.

(3) The Clerk of Court must terminate the action and enter judgment accordingly.

DATED this 19th day of May, 2008.

_____
James A. Teilborg
United States District Judge